UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| James Gray III, | ) | |
|             Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 08-1197 |
| | ) | |
| Keystone Steel and Wire Co., | ) | |
|             Defendant | ) | |

**ORDER AND OPINION**

The parties have consented to have this case heard to judgment by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and the District Judge has referred the case to me. Now before the court are the Defendant's motion for summary judgment (#31); the defendant's motion to strike (#40); and the defendant's motion for leave to file under seal (#44). As explained herein, the motion for summary judgment is GRANTED. The motion to strike is DENIED. The motion for leave to file under seal is GRANTED.

**MOTION TO STRIKE**

The Plaintiff is proceeding pro se. His response to the motion for summary judgment is not in the format required by the Local Rules of this Court. Specifically, where he has indicated that he disputes facts put forward by Defendant, he has not provided specific reference to any evidentiary support as required by CDIL LR 7.1D.

Even a *pro se* plaintiff has obligations to comply with the requirements of the Federal Rules and with the local rules of the various courts. As the Supreme Court has held, "[I]n the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." Mohasco Corp. v. Silver, 447 U.S. 807, 826 (1980). See also, McMasters v. U.S., 260 F.3d 814, 817 (7th Cir. 2001); Myles v. U.S., 416

F.3d 551, 552 (7th Cir. 2005).

In Greer v. Bd. of Education, 267 F.3d 723 (7th Cir. 2001), the Court upheld entry of summary judgment against a pro se plaintiff who had utterly failed to comply with the local rule requiring a non-movant to admit or deny each factual statement proffered by the movant and to designate material facts in dispute. (*4). In response to plaintiff's argument about liberal construction of pro se pleadings, the court quoted Hudson v. McHugh, 148 F.3d 859, 964 (7th Cir. 1998): "The essence of liberal construction is to give a pro se plaintiff a break when, although he stumbles on a technicality, his pleading is otherwise understandable." The Greer court went on to comment that a lawsuit is not "a game of hunt the peanut. . . [N]either appellate courts nor district courts are obliged in our adversary system to scour the record looking for factual disputes." See also, Salvadori v. Franklin Sch. Dist., 293 F.3d 989, 992 (7th Cir.2002); Hedrich v. Bd. of Regents of Univ. of Wis. Sys., 274 F.3d 1174, 1178 (7th Cir.2001); Waldridge v. American Hoechst Corp., 24 F.3d 918, 922 (7th Cir.1994); Ziliak v. AstraZeneca LP, 324 F.3d 518, 520 (7th Cir.2003).

It is clear that the Response filed by Mr. Gray does not comport with Local Rule 7.1D. The Court certainly would be justified in striking the Response. Nonetheless, this case does not have an extensive record. The evidence submitted by the two parties was easily perused in one morning. The facts are not overly complex. Although it could, therefore, the Court elects not to strike the response.

This is not to say that the Court is pleased with Mr. Gray's failure to follow the Rule. He is clearly capable of presenting his side of this case and he should have done so in a manner consistent with the Rules of this Court. In the interests of judicial economy and general efficiency, however, the Court chooses to rule on the merits. The motion to strike is DENIED.

**UNDISPUTED FACTS**

The following statement of facts is taken from the parties' statements of fact, the responses thereto, and the evidence submitted in support.

Mr. Gray was employed at Keystone on March 7, 2007, he was charged with a disciplinary infraction, namely falsifying his time card. Falsification of a timecard is a violation of the Keystone General Plant Conduct Rules and Regulations (Exh. E) and it is grounds for immediate termination.

The charge was based on statements given by two of Gray's foremen at the plant, both of whom stated that they had been watching for Gray to punch in from 2:18 to 2:45 p.m. on March 7. They did not, according to their statements, see him punch his time card during that time period. Their statements indicate that they received a call at 2:30 or so, informing them that Gray was elsewhere in the plant, talking to his union committeeman[1]. He arrived at his workstation at 2:45 or so, immediately going to work without first punching in. Gray's time card for this date, however, showed a punch at 2:22.

Keystone's Director of Labor Relations, Ernie Matthews, reviewed the documents submitted by the supervisors and reviewed the March 7 time cards. He interviewed witnesses. A disciplinary hearing was held in which Plaintiff was allowed to present evidence and testify. Following the hearing, the panel evaluated the evidence that had been presented and concluded that Gray had someone (the company never identified who that person was) punch his time card, a clear violation of the work rule. Over his protestations that he had in fact punched in (and that the supervisors could not have seen the time clock from the office where they were watching), Gray was discharged. He filed a grievance. The union and the employer came to an agreement nearly 2 years later that Gray

---

[1]The record indicates that this is not an infraction of work rules, as long as the employee has permission from his supervisor, which Gray did not. The parties agree, however, that Gray's termination was unrelated to this conduct.

would be re-hired. The agreement contained no provision for lost wages or benefits.

Mr. Gray, who was not happy with the agreement, did not personally sign the agreement. He came back to work at his old job, however, and he remains employed at Keystone. During the period when he was unemployed, he sought employment in factory, automotive and carpentry fields.

Prior to the disputed discharge, Gray had had two surgeries for torn rotator cuffs, one on each shoulder. The first surgery was on September 1, 2004, the second on March 9, 2007. Beginning in 2001 and continuing through the date of his second surgery, Gray had complained verbally to his supervisors and to co-workers on numerous occasions about his shoulder pain. On a number of occasions following a complaint, he was sent to a company doctor who returned him to the floor to work without restrictions. His supervisors pushed him to meet or exceed production quotas, even though they knew about his pain. Each surgery generated a worker's compensation claim, and each ultimately resulted in Gray's release to return to work without restriction following recovery from the surgery. While Gray complains that his range of motion has been somewhat compromised by the surgeries, he also agrees that he can perform all of the functions of his job without restriction, including meeting all production quotas, and that he never requested an accommodation. Although he has some pain in his shoulders, he is able to control it with over-the-counter pain medications; he takes no prescription medication for pain.

Gray believed that his termination was related to his shoulder injuries.[2] He filed this lawsuit, alleging that Keystone discharged him because of his disability or in retaliation for his complaints of pain. Defendant has filed a motion for summary judgment, attacking both claims.

---

[2]Gray, who is African American, originally included a race discrimination claim in this lawsuit. He has since conceded that he has no such claim. To that extent, the motion for summary judgment is GRANTED.

## SUMMARY JUDGMENT GENERALLY

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment should be entered if and only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. See Jay v. Intermet Wagner Inc., 233 F.3d 1014, 1016 (7th Cir.2000); Cox v. Acme Health Serv., 55 F.3d 1304, 1308 (7th Cir. 1995).

In ruling on a summary judgment motion, the court may not weigh the evidence or resolve issues of fact; disputed facts must be left for resolution at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. Waldridge v. American Hoechst Corp., 24 F.3d 918, 922 (7th Cir.1994). The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial.

The court is to examine all admissible facts, viewing the entirety of the record and accepting all facts and drawing all reasonable inferences in favor of the non-movant, Erdman v. City of Ft. Atkinson, 84 F.3d 960, 961 (7th Cir. 1996); Vukadinovich v. Bd. of Sch. Trustees, 978 F.2d 403, 408 (7th Cir. 1992), cert. denied, 510 U.S. 844 (1993); Lohorn v. Michal, 913 F.2d 327, 331 (7th Cir. 1990); DeValk Lincoln-Mercury, Inc. V. Ford Motor Co., 811 F.2d 326, 329 (7th Cir. 1987); Bartman v. Allis Chalmers Corp., 799 F.2d 311, 312 (7th Cir. 1986), cert. denied, 479 U.S. 1092 (1987), and construing any doubts against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); Trotter v. Anderson, 417 F.2d 1191 (7th Cir. 1969); Haefling v. United Parcel Serv., Inc., 169 F.3d 494, 497 (7th Cir.1999).

If the undisputed facts indicate that no reasonable jury could find for the party opposing the motion, then summary judgment must be granted. Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995), citing Anderson, 477 U.S. at 248. If the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party and on which that party will bear the burden of proof at trial, then summary judgment is proper. Celotex, 477 U.S. at 322; Waldridge, 24 F.3d at 920.

## DISCRIMINATION

The Americans with Disabilities Act ("ADA") prohibits discrimination on the basis of disability. The ADA defines "disability" as (1) a physical or mental impairment that substantially limits one or more major life activities; (2) a record of such impairment; or (3) being regarded as having such impairment. 42 U.S.C. § 12102(1). Keystone argues that Gray's claims fails as a matter of law because Gray is and was not disabled under any one of those three definitions.

Where a discrimination claim is based on either an actual disability or a record of disability, a plaintiff bears the burden of showing that he is actually disabled within the meaning of the ADA. Cassimy v. Bd. of Educ. of the Rockford Public Schools, 461 F.3d 932, 935-36 (7th Cir. 2006)(collecting cases). Here, Gray would have to show that his shoulder injuries substantially limit a major life activity such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i); Sinkler v. Midwest Property Mgmt. Ltd. P'ship, 209 F.3d 678, 683-84 (7th Cir. 2000).

The limitation cannot be temporary; it must be "severe and prolonged." Burks v. Wis. Dep't of Transp., 464 F.3d 744, 757 (7th Cir. 2006). "Temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities." 29 C.F.R. Pt.

1630, App. § 1630.2(j).

Gray has wholly failed to show that he is disabled or has a record of disability, as those terms are used in the ADA. There is no doubt that Gray had an impairment, but having an impairment is not enough under the ADA. His torn rotator cuffs were conditions that were temporary and that were resolved with surgery. Any permanent effect of either surgery has not caused him any substantial limitation in his ability to perform his job. Indeed, the record indicates there has been no permanent limitation at all in Gray's ability to perform his job duties. This conclusion is not belied by Gray's insistence that "any time a surgery is preformed [sic] the incision is never temporary. It may relieve some or most discomfort but there is always some permanent damage done." (Response, p.8). This statement may be true, but it does not mean that he was "disabled" as that term is defined by the statute. A scar is not a disability, and discomfort is not a substantial limitation. That he was able to work through his discomfort demonstrates that the permanent effect of his shoulder problems did not constitute disability. Because he has failed to show an actual disability, his claim of discrimination fails unless he can show that Keystone perceived him as disabled. Under that theory, a plaintiff must demonstrate either that Keystone mistakenly believed that (1) Gray had a physical impairment that substantially limited a major life activity, or (2) an actual, non-limiting impairment substantially limited a major life activity. Brunker v. Schwan's Home Service Inc., 583 F.3d 1004, 1008 (7th Cir. 2009).

Once again, however, the record is entirely to the contrary. Keystone's perception of Gray's shoulder impairment was that it did not amount to a disability. Keystone believed neither that Gray had a "disability" when he did not, nor that Gray's shoulder impairment substantially limited his ability to work. This record shows that Keystone perceived quite the opposite, namely that Gray was

7

not disabled even when he was impaired. Even when Gray complained about pain, he was returned to the factory after a doctor visit. After his surgeries, he returned to the same job with the same functions. The only thing that happened after his surgeries was his discharge, and there is nothing about that discharge that hints at all of a perception that Gray was somehow physically unable to do his job. Everything in the record before the Court supports the conclusion that Keystone at all times perceived Gray as being physically capable.

Even if Keystone did somehow weigh Gray's medical background into its decision to terminate his employment (and there is nothing in the record that would suggest this, other than Gray's speculation), it would be wholly unreasonable to infer that Gray's medical background was the "but for" reason for his discharge.[3] At best, this would be a mixed motive case - Keystone would have fired him anyway for falsifying his time card - and the ADA does not permit mixed motive cases. Serwatka, 591 F.3d 957. Plaintiff's efforts to show that the reason given was actually false is beside the point. To discredit Keystone's stated reason for his discharge, Gray would have to show pretext, namely that Keystone did not honestly believe that he falsified his timecard. The focus of pretext is not on whether the stated reason was "accurate, wise or well-considered," Stewart v. Henderson, 207 F.3d 374, 378 (7th Cir. 2000), and pretext is not established merely by a demonstration that the reason was mistaken. Id.. See also, Ptasznik v. St. Joseph Hosp., 464 F.3d 691, 696 (7th Cir. 2006); Wade v. Lerner N.Y.Inc., 243 F.3d 319, 323 (7th Cir. 2001). Gray has pointed to no evidence suggesting that anyone involved in the decision to discharge Gray did not

---

[3]Congress amended the ADA, with amendments taking effect on Jan. 1, 2009, well after Gray's discharge and well after he filed this lawsuit. As the 7th Circuit Court has noted, whether those amendments changed the "but for" causation requirement is an open question but immaterial in cases arising out of conduct prior to the effective date of the amendments. Serwatka v. Rockwell Automation Inc., 591 F.3d 957, 962 n.1 (7th Cir. 2010).

honestly believe Gray falsified his time card.

For any one of these reasons, I conclude that Gray has failed to make out a prima facie case of discrimination and that he has failed to show pretext. These conclusions make it unnecessary to address several peripheral issues raised by the parties. For the sake of completeness, however, these issues will be mentioned briefly.

First, given Gray's worker's compensation claims (and presumably his time off work for each surgery), it is disingenuous for Keystone to deny a complete lack of knowledge of Gray's injuries or impairment. If this were the only question, there would be enough of a record to deny summary judgment. But this question is immaterial given that Plaintiff has not made out a prima facie case.

Second, Gray's argument might be read as asserting that it was discriminatory not to exempt him from the company's production quotas. In other words, were his complaints about being forced to meet these quotas really a request for accommodation? The answer to that question does not, in this case, affect the outcome. Even if his complaints of pain were construed as requests for accommodation, his discrimination claim would still fail because he cannot establish that he is or was disabled under the ADA. If he was not disabled, Keystone had no obligation to provide an accommodation.

Third, Gray finds fault with Keystone's assertion that his complaints were too far removed temporally to satisfy the requirement that there be a causal link between the complaints. Temporal proximity between the protected expression and the adverse action will "rarely be sufficient in and of itself to create a triable issue." Stone v. City of Indianapolis Public Utilities Div., 281 F.3d 640, 644 (7th Cir. 2002). Any inference of causation weakens as the time between the two increases. See

e.g., Oest v. IDOC, 240 F.3d 605, 616 (7th Cir. 2001)(1 year gap in time "too attenuated" to raise inference of discrimination); Johnson v. Univ of Wis. Eau Claire, 70 F.3d 469, 480 (7th Cir. 1995)(substantial time lapse is "count-evidence" of causal link). "The mere fact that one event preceded another does nothing to prove that the first event caused the second." Sauzek v. Exxon Coal USA Inc., 202 F.3d 913, 918-19 (7th Cir. 2000).

For purposes of this motion, the Court has credited Gray's assertion that he made complaints throughout the roughly-six year period of 2001-March of 2007. The court's ruling, however, is based on matters entirely separate from timing. In other words, even assuming Gray is correct about the timing of his complaints, it does nothing to advance his cause.

Because Plaintiff has failed to demonstrate any factual dispute about whether he was actually disabled or about pretext, his claim of discrimination fails. The Defendant's motion for summary judgment on the discrimination claim is granted.

## RETALIATION

The ADA also prohibits retaliation[4] against an employee who "has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 200e-3(a). As is the case in other employment discrimination statutes, there are two ways for a plaintiff to proceed. Under the direct method, a plaintiff must present evidence of (1) a statutorily protected activity; (2) an adverse employment action; and (3) a causal connection between the two. Squibb v. Memorial Medical Center, 497 F.3d 775, 786 (7th Cir. 2007). To succeed under the indirect

---

[4] Courts may look to Title VII retaliation claims for guidance in deciding ADA retaliation claims. Casna v. City of Loves Park, 574 F.3d 420, 427 (7th Cir. 2009)

method of proof on a retaliation claim, a plaintiff must demonstrate that (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action despite performing at the level legitimately required by the employer; and (3) that no similarly situated employee who did not engage in protected activity suffered an adverse employment action. Id. at 787. See also Stone, 281 F.3d at 640.

It is certain that Gray did not, prior to his discharge, file a charge of discrimination or participate in an investigation, proceeding, or hearing. What he did was complain, orally and repeatedly to his supervisors and to the company doctor, about the pain in his shoulders. Defendant argues that Gray's complaints of pain do not constitute statutorily protected activity.

The answer to this question is not crystal clear. In Sitar v. Indiana Department of Transportation, 344 F.3d 720 (7th Cir.2003), the Court stated:

> Although an employee need not use the magic word[ ] ... "discrimination" to bring her speech within Title VII's retaliation protection, she has to at least say something to indicate her [protected status] is an issue. An employee can honestly believe she is the object of discrimination, but if she never mentions it, a claim of retaliation is not implicated, for an employer cannot retaliate when it is unaware of any complaints.

See also, Miller v. Am. Family Mut. Ins. Co., 203 F.3d 997, 1008 (7th Cir.2000). Accord, Nigro v. St. Tammany Parish Hospital, 377 F. Supp.2d 595 (E.D. La.2005); Watkins v. Tex. Dep't of Criminal Justice, - F.3d -, No. 06-20843, 2008 WL 686571, at *3 (5th Cir. Mar.12, 2008).

Nothing in the record in the instant case tells the Court what words Gray used when he voiced his complaints. Did he say he could not do the work because his shoulder hurt? Or did he say that the supervisor's insistence that he do the work was discrimination or retaliation? We do not know.

Nor need we know, because in this case, it is not necessary to answer the question that

Defendant poses. Assuming for the sake of argument that Gray's oral complaints of pain to supervisors and/or co-workers constitute protected activity that triggers the anti-retaliation provision of the ADA, Plaintiff's retaliation claim fails because he has not shown that he was treated differently than employees who did not engage in protected activity. The fact that Keystone supervisors may have pushed Gray to increase his production despite his complaints of pain proves nothing in the absence of proof that these supervisors were NOT pushing other employees who had not made complaints of pain. There is no such evidence in the record.

What of Plaintiff's claim that the company retaliated against him by making him work at enhanced production levels despite his complaints of pain. Hypothetically, it is conceivable that an employer could retaliate against a complaining employee by changing that employee's job duties in a way that the employee's physical impairment would make impossible to perform. But there is nothing in the record of this case from which one might infer that Gray - and no one else - was subject to the production quotas. His complaint was that he was not exempt from those quotas. This argument does not advance his retaliation claim at all.

Plaintiff has made a last-minute effort[5] to show that he was treated more harshly than similarly situated employees who were discharged for falsifying time cards. According to Gray, these two employees grieved their discharge and were reinstated within a few months[6], rather than 22 months. He claims that the differential treatment was retaliation for having complained about his

---

[5] At no time prior to Gray's response to the motion to strike was the issue of similarly situated employees raised by him.

[6] Documents seem to indicate that they were discharged on April 12, 2007. The settlement converted the discharge to a suspension, and they were returned to work on June 10, 2007, without any financial adjustments for lost wages or benefits during the suspension.

disability.

To be similarly situated, employees must have dealt with the same supervisor, were subject to the same standards, and engaged in similar conduct; there should be no circumstances as would meaningfully distinguish their conduct or the employer's treatment of them. <u>Snipes v. IDOC</u>, 291 F.3d 460, 463 (7th Cir. 2002). Other than the fact that they were disciplined for the same reason, Plaintiff has failed to produce any evidence from which the Court might infer that these employees were not similarly situated. That is not enough.

First, Plaintiff must demonstrate that there is a basis for comparison. In other words, he must show that employees who did NOT engage in protected activity but were otherwise similarly situated were treated differently. In the record before the Court, there is no evidence whatsoever that these two workers were *outside* the protected class. In fact, Defendant has submitted evidence (Exh. M) showing that both of these employees made claims for repetitive stress injuries and worker's compensation claims, meaning that they were *within* the same class as Plaintiff.

In addition, even though these 2 employees were within the same protected class as was Plaintiff, they were not "similarly situated." Within 2 months after their grievances were filed, these two employees settled their grievance with Keystone, agreeing to reinstatement without backpay. The Union was however, unsuccessful in negotiating a prompt settlement for Gray, because he refused to accept reinstatement without backpay. In December of 2008, the Union asked Defendant to reopen negotiation of Gray's claim and ultimately, without Gray's consent, Keystone and the Union settled the grievance authorizing reinstatement without backpay. Gray himself refused to sign the agreement because he thought he should be compensated for lost wages and benefits. This distinction fully explains the difference between the treatment of Gray and the treatment of the two

employees, and the difference stems not from any violation of the ADA but wholly from Gray's own conduct.

This distinction between Gray and the other two employees means that they were not similarly situated to Gray. As a matter of fact, the distinction actually strengthens Keystone's case. It demonstrates a uniform imposition of discipline for violation of the company rule prohibiting falsification of time cards: everyone found to do so was discharged. Gray was not singled out. That his separation lasted so long is attributable only to his stance regarding settlement.

The record in this case falls far short of demonstrating a triable issue of retaliation. The motion for summary judgment as to that claim is therefore granted.

MOTION FOR LEAVE TO FILE UNDER SEAL

In support of its argument that Gray was not similarly situated to the other two employees, Defendant tendered the affidavit of Ernest Matthews, Director of Labor Relations at Keystone. One paragraph of that affidavit ( ¶ 14) deals with the fact that the two employees each had injury and worker's compensation claims. In support of that statement, Mathews refers to internal personnel records for those employees. It is the personnel records themselves which Defendant has moved to file under seal[7].

In resolving the motion for summary judgment, the Court relied on Matthews' affidavit. There was no specific reliance on the supporting documentation. Accordingly, there is no reason these documents should not remain under seal. The motion for leave is therefore granted.

## CONCLUSION

---

[7]Properly using this Court's Rules for filing under seal, the documents were filed under seal contemporaneously with the filing of the motion for leave to do so.

As stated above, the motion to strike [#40] is denied. The motion for leave to file under seal [#44] is granted. The motion for summary judgment [#31] is granted.

The Clerk is directed to enter judgment in favor of Keystone and against James Gray. The parties shall bear their own costs. This case is closed.

ENTERED ON May 7, 2010

                                  s/ John A. Gorman

                                  JOHN A. GORMAN
                        UNITED STATES MAGISTRATE JUDGE